# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

RANDALL GLENN ROSSBACH,
>Appellant,

v.

DEPARTMENT OF THE INTERIOR,
>Agency.

DOCKET NUMBER
DC-315I-14-0066-B-1

DATE: March 30, 2022

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Glenn L. Smith</u>, Esquire, Grand Rapids, Michigan, for the appellant.

<u>James Nicklas Holt, Jr.</u>, Knoxville, Tennessee, for the agency.

**BEFORE**

Raymond A. Limon, Vice Chair
Tristan L. Leavitt, Member

**FINAL ORDER**

¶1 The agency has filed a petition for review of the remand initial decision, which denied the appellant's request for corrective action under the Veterans Employment Opportunities Act of 1998 (VEOA) and reversed his termination on the grounds that the agency failed to effect the action prior to the end of his probationary period and failed to provide him the minimum due process owed a

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

tenured Federal employee.  Generally, we grant petitions such as this one only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).   After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the remand initial decision, which is now the Board's final decision.  5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2        Effective August 26, 2012, the agency appointed the appellant to a Maintenance Worker Supervisor position in the competitive service at Great Smoky Mountains National Park in North Carolina.  *Rossbach v. Department of the Interior*, MSPB Docket No. DC-315I-14-0066-I-1, Initial Appeal File (IAF), Tab 4 at 7, 15.  His appointment was subject to a 1‑year probationary period and required him to possess or obtain a North Carolina Water Operators License (C‑Well) within 1 year.  IAF, Tab 37 at 28.

¶3        On Thursday, August 22, 2013, the appellant emailed his supervisor requesting leave without pay (LWOP) under Executive Order (EO) 5396 due to a medical emergency.   IAF, Tab 18 at 8.  The next day, on August 23, 2013, the agency mailed a notice to the appellant's out-of-state address informing him that, effective that day, he was being terminated during his probationary period due to his failure to obtain a C-Well license within 1 year of his appointment.   IAF,

Tab 4 at 7-8.  The notice informed the appellant that his probationary period expired on August 25, 2013, and that, as a probationary employee, his appeal rights were limited.  *Id*. at 7.  On Saturday, August 24 and Sunday, August 25, 2013, the appellant sent text messages to his supervisor stating that he would be getting a heart catheterization on Monday and reiterating his request for leave under EO 5396.  IAF, Tab 18 at 9-10.  Although the appellant's text messages did not meet the requirements for requesting leave under EO 5396, the agency granted him sick leave for August 23 and 24, 2013.  IAF, Tab 37 at 25.  On Monday, August 26, 2013, the Deputy Chief left a voicemail on the appellant's agency-issued cell phone informing him that his termination would be processed by 4:00 p.m. that day unless he opted to resign within the next 30 minutes.  IAF, Tab 36 at 5.

¶4        On September 20, 2013, the appellant submitted a claim to the Department of Labor (DOL) alleging that the agency had violated his veterans' preference rights when it terminated him the day after he requested LWOP under EO 5396. IAF, Tab 4 at 17-20.   After DOL notified the appellant that it would not investigate his claim, he filed a Board appeal challenging his probationary termination and alleging that the agency violated his veterans' preference rights. IAF, Tab 1.  Without holding the appellant's requested hearing, the administrative judge dismissed the appeal for lack of jurisdiction, finding that the agency terminated the appellant during his probationary period for conduct that occurred after his appointment and that he did not allege that his termination was based on partisan political reasons or marital status discrimination.  IAF, Tab 42, Initial Decision (ID) at 3-7.  The administrative judge found Board jurisdiction over the appellant's VEOA claim but determined that he failed to show that the agency violated one or more of his statutory or regulatory veterans' preference rights.  ID at 7-11.   Thus, the administrative judge denied the appellant's request for corrective action under VEOA.  ID at 12.

¶5      On petition for review of the initial decision, the Board found that it was unclear from the record when the appellant's probationary period ended and when he received notice of his termination and that it did not appear that he received notice of his termination before its effective date. *Rossbach v. Department of the Interior*, MSPB Docket No. DC-315I-14-0066-I-1, Remand Order, ¶ 15 (Feb. 17, 2016). Thus, the Board concluded that the appellant made a nonfrivolous allegation that the agency failed to provide him notice of his termination before the end of his tour of duty on the last day of his probationary period and that he was entitled to a jurisdictional hearing. *Id.*, ¶¶ 10-15, 19. The Board also found that the administrative judge erred in deciding the appellant's VEOA claim without holding his requested hearing. *Id.*, ¶ 20. Accordingly, the Board remanded the appeal to the regional office for further adjudication. *Id.*, ¶ 22.

¶6      On remand, the administrative judge held a hearing and issued a remand initial decision finding that the appellant's probationary period ended on August 25, 2013, at 3:30 p.m., and that he was not notified of his termination until after 7:00 p.m. on that day. *Rossbach v. Department of the Interior*, MSPB Docket No. DC-315I-14-0066-B-1, Remand File (RF), Tab 21, Remand Initial Decision (RID) at 10‑11. She further found that the agency failed to take reasonable efforts to notify the appellant of his termination prior to its effective date. *Id.* Thus, she concluded that the agency failed to terminate the appellant prior to his completing the probationary period and that, because he was denied the minimum due process owed a tenured Federal employee, his termination must be reversed. RID at 11‑12. The administrative judge found that the appellant established jurisdiction over his VEOA claim but that he failed to show by preponderant evidence that the agency violated one or more of his statutory or regulatory veterans' preference rights. RID at 12-16. Therefore, she denied his request for corrective action under VEOA. RID at 16.

¶7 The agency has filed a petition for review of the remand initial decision, the appellant has responded in opposition, and the agency has replied to the agency's response. *Rossbach v. Department of the Interior*, MSPB Docket No. DC-315I-14-0066-B-1, Remand Petition for Review (RPFR) File, Tabs 1, 3-4.[2]

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The administrative judge correctly found that the appellant did not receive actual or constructive notice of his termination prior to the completion of his probationary period.</u>

¶8 To terminate a probationary employee in the competitive service for conduct occurring after his appointment, the agency must notify him "in writing as to why he is being separated and the effective date of the action." 5 C.F.R. § 315.804(a). The Board has held that "the plain meaning of the regulatory language indicates that the employee is not terminated until he receives such notice since it is only 'by notifying him in writing' that termination of the employee's services is accomplished." *Lavelle v. Department of Transportation*, 17 M.S.P.R. 8, 15 (1983) (quoting 5 C.F.R. § 315.804), *modified on other grounds by Stephen v. Department of the Air Force*, 47 M.S.P.R. 672 (1991).[3] An employee need not receive actual delivery of the agency's notice before the effective date of the termination so long as the agency's attempts to notify him were diligent and reasonable under the circumstances. *Id.* If the agency made diligent and reasonable attempts to effect service of the notice prior to the effective date of the action, then the Board will find that the employee received

---

[2] On review, the parties do not challenge the administrative judge's decision denying the appellant's request for corrective action on the merits of his VEOA appeal, RPFR File, Tabs 1, 3-4, and we find no basis to disturb this finding, *see Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility).

[3] Although *Lavelle* quotes a previous version of 5 C.F.R. § 315.804, the current version of the regulation contains the identical language regarding providing employees written notice of their termination.

constructive delivery of the notice. *Id.* If an employee does not receive actual or constructive delivery of written notice of his termination until after the effective date of the action, the action is not effective until actual receipt of the notice by the employee. *Id.* at 16.

¶9 As noted above, the administrative judge found in the remand initial decision that the appellant's probationary period ended on August 25, 2013, at 3:30 p.m. and that the agency did not notify him of his termination, verbally or in writing, prior to that date and time. RID at 10. On review, the parties do not challenge the administrative judge's findings that the appellant's probationary period ended at 3:30 p.m. on August 25, 2013, and that he did not receive written notice before that date and time. RPFR File, Tabs 1, 4. We agree that the record supports these findings and discern no basis to disturb them. *See Crosby v. U.S. Postal Servic*e, [74 M.S.P.R. 98](#), 105‑06 (1997).

¶10 The agency argues, however, that the administrative judge erred in finding that the appellant did not receive verbal notice prior to the end of his probationary period because he conceded in his September 20, 2013 submission to DOL that he received a voicemail from the Deputy Chief on August 23, 2013, notifying him of his termination. RPFR File, Tab 1 at 6, 9‑11, Tab 4 at 5‑8; RF, Tab 8 at 38. The appellant responds that he merely misstated the date of the voicemail in his DOL submission, that he was unable to verify the date because the agency turned off his agency cell phone after his termination, and that he was "heavily medicated and sedated while in the hospital," which led to his misstatement regarding the date of the voicemail. RPFR File, Tab 3 at 14. The appellant further argues that the record and hearing testimony confirm that the Deputy Chief did not leave a voicemail on his agency cell phone on August 23, 2013. *Id.* at 14-15.

¶11 As correctly noted by the appellant, the Deputy Chief testified at the hearing that he did not call the appellant on his agency cell phone on August 23 or 24, 2013, and that he did not speak to him about his termination

until after 7:00 p.m. on Sunday, August 25, 2013. RF, Tab 20, Hearing Compact Disc (HCD) (testimony of the Deputy Chief). In addition, the agency-produced transcripts of voicemails found on the appellant's agency cell phone reflect that the Deputy Chief left two voicemails for the appellant on August 26, 2013, but did not leave any messages for him on August 23, 2013. RF, Tab 10 at 37-38. The transcript of the 3:27 p.m. voicemail from August 26, 2013, reflects that he informed the appellant that the agency would process his termination at 4:00 p.m. that day if he did not call to resign within the next 30 minutes. *Id.* at 38.

¶12    The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Here, the administrative judge found that the Deputy Chief's hearing testimony was credible, RID at 10, and the agency has not alleged that there are any reasons to overturn this credibility determination, RPFR File, Tabs 1, 4. The agency argues, however, that the Deputy Chief "merely responded in the negative to the question of whether he called the Appellant on Friday, August 23, 2013," and that this "statement is ambiguous as to whether a voice mail message was recorded." RPFR File, Tab 4 at 7-8. We find this contention unavailing. The Deputy Chief clearly testified that he did not call the appellant on August 23 or 24, 2013, and his testimony provides no support for the agency's claim that he may have left a voicemail for the appellant on August 23, 2013, despite the fact that he did not "call" him that day. HCD (testimony of the Deputy Chief). Therefore, we conclude that the appellant did not receive a voicemail from the Deputy Chief on August 23, 2013, informing him of his termination. We further discern no basis to disturb the administrative judge's determination that the agency did not inform the appellant of his termination at any time prior to his completing the probationary period on Sunday, August 25, 2013, at 3:30 p.m.

¶13     Nonetheless, as noted above, an employee will be deemed to have received constructive notice of his termination if the agency made diligent and reasonable attempts under the circumstances to effect service of the notice prior to the effective date of the action. *Lavelle*, 17 M.S.P.R. at 15-16. Here, the administrative judge found that the agency's efforts to effect prior service on the appellant were insufficient. RID at 10-11. In so finding, she noted that the agency mailed the termination notice to the appellant's residence in Michigan via first‑class mail and certified mail on Friday, August 23, 2013, but did not attempt to send the letter by Federal Express to ensure delivery before the end of his probationary period. RID at 10. She further noted that the appellant's agency‑issued cell phone was not disconnected until August 27, 2013, but that the agency did not attempt to text him to inform him that he was being terminated. *Id.* In addition, the administrative judge noted that the agency could have called or texted the appellant on his agency-issued cell phone or tried to contact the 10 local hospitals to determine his location to serve him with the termination letter in person. RID at 10-11.

¶14     On review, the agency argues that the administrative judge erred in finding that it did not make a reasonable and diligent effort to inform the appellant of his termination in writing prior to the end of his probationary period when, on August 24, 2013, the Chief Deputy and the appellant's first-level supervisor attempted to personally deliver the termination notice to him at his duty station. RPFR File, Tab 1 at 16‑17, Tab 4 at 8-12. The agency further argues that the administrative judge failed to consider relevant case law that supports a finding that the appellant received constructive notice in this case. RPFR File, Tab 1 at 11‑15, Tab 4 at 8-11. For the reasons that follow, we find that these arguments provide no basis to disturb the initial decision.

¶15     In the first case cited by the agency, the U.S. Court of Claims found that the agency constructively notified a probationary employee of his January 2, 1972

termination when, after he unexpectedly did not report to work on December 30, 1971, it sent copies of the notice to his home address by mail and messenger and, upon learning the next day that he was in the hospital, sent a telegram with the contents of the notice to the hospital, which the employee's wife refused to accept. *Shaw v. United States*, 622 F.2d 520, 523, 528 (Cl. Ct. 1980). The court also found probative the fact that the employee was verbally notified of his "imminent termination" on December 29, 1971, and that "[h]e had every reason to expect a notice would soon be delivered to him, yet curiously enough, he received none of the many notices sent until the day after his discharge from the hospital." *Id.* at 528.

¶16    In the second case cited by the agency, the Board found that the agency constructively notified a probationary employee of her termination when, while she was out on sick leave, it sent a messenger to personally serve her with the termination notice and, upon finding that she was not home, the messenger taped the termination notice on her door. *Cephas v. Department of the Treasury*, 27 M.S.P.R. 69, 72 , *aff'd*, 785 F.2d 321 (Fed. Cir. 1985) (Table). The Board explained that sending a messenger to personally deliver the notice to the employee's home when her whereabouts were unknown was indicative of due diligence by the agency. *Id.*

¶17    We find that *Shaw* and *Cephas* are distinguishable from the instant case.[4] As noted above, the agency mailed the termination notice to the appellant's residence in Michigan by certified and first-class mail on Friday, August 23, 2013—the purported effective date of the termination. RF, Tab 8 at 34; HCD

---

[4] The third case, cited by the agency as *Bartholomew v. United States*, 1983 U.S. Dist. LEXIS 17367 (N.D. Ill. 1983), appears to be an unpublished Federal district court case. RPFR File, Tab 1 at 14, Tab 4 at 11. The agency did not provide a copy of this decision, and we are unable to locate it. In any event, we need not consider *Bartholomew* because district court decisions are not binding on the Board, and unpublished opinions are of no precedential value. *Ruiz v. U.S. Postal Service*, 59 M.S.P.R. 76, 79 (1993).

(testimony of the Deputy Chief). On the morning of Saturday, August 24, 2013—the day *after* the stated effective date of the termination—the Deputy Chief and the appellant's first‑level supervisor attempted to deliver the termination notice to him at his duty station but were unable to do so because he did not report to work that morning. HCD (testimony of the Deputy Chief). According to the Deputy Chief, once they realized the appellant was not going to report to work that day, the appellant's first-level supervisor attempted to call him at his home and on his cell phone but was unable to reach him or to determine to which hospital he had been admitted. *Id.* The Deputy Chief also testified that the agency took no further steps to effect timely service of the written termination notice on the appellant. *Id.*

¶18        Unlike the agencies involved in both the *Cephas* and *Shaw* cases, the agency here did not attempt to use a messenger or any delivery service that was reasonably likely to deliver notice to the appellant's home address before the effective date of the action or before the end of his probationary period. Rather, as noted above, the agency sent the termination notice to the appellant's residence in Michigan by first‑class and certified mail on the effective date of the action, Friday, August 23, 2013. RF, Tab 8 at 34; HCD (testimony of the Deputy Chief). The Board has specifically held that mailing a termination notice to an employee by certified mail on the effective date of the action was "completely inadequate to ensure prior service." *Lavelle*, 17 M.S.P.R. at 15. Unsurprisingly, the termination notice was not delivered to the appellant's out-of-state residence on the same day it was mailed, and a tracking report submitted by the agency reflects that the Postal Service first attempted to deliver the certified letter on August 27, 2013. RF, Tab 8 at 33-34, 65. Thus, even if the appellant had been at his residence, rather than in the hospital, he would not have received the mailed termination notice before its effective date on August 23, 2013, or before the end of his probationary period on August 25, 2013.

¶19	Unlike the agency in *Shaw*, the agency here did not make reasonable efforts to effect timely service on the appellant in the hospital upon learning that he would not be reporting to work. Although the agency contends that it did not know to which hospital the appellant had been admitted, we agree with the administrative judge's finding that the agency failed to make reasonable efforts to determine that information by, for example, calling or texting the appellant on his agency-issued cell phone, which he had been using to text his supervisor, or by trying to contact the 10 local hospitals to find out if the appellant had been admitted there. RID at 10‑11. In addition, unlike the employee in *Shaw*, who did not request leave or notify his employing agency that he was being admitted to the hospital, the appellant here notified his first‑level supervisor on Thursday, August 22, 2013, that he had to go to the emergency room and sent text messages to him on Saturday, August 24 and Sunday, August 25, 2013, stating that he would be getting a heart catheterization on the following Monday. RF, Tab 8 at 9‑10, 16-17, Tab 10 at 26.

¶20	Similarly, unlike the employee in *Shaw*, the appellant here had no reason to expect that his termination was imminent because, as discussed above, he did not receive verbal notice of his termination prior to the end of his probationary period. Moreover, the record reflects that on August 20, 2013, the agency authorized his travel to retake the C‑Well certification examination on August 29, 2013. RF, Tab 10 at 66‑71.

¶21	In light of the foregoing, we find that the agency failed to take diligent and reasonable efforts under the circumstances to constitute timely constructive notice. Accordingly, we find no basis to disturb the administrative judge's determination that the agency failed to effect the appellant's termination before the end of his probationary period, and we agree that the appellant's termination must be reversed. RID at 12.

**We reject the agency's argument that the appellant's improper termination appeal should be dismissed as untimely filed.**

¶22 The agency argues on review that the appellant first alleged that his probationary termination was improper in February 2015, more than 30 days after the effective date of his August 23, 2013 termination, or his receipt of the termination notice, and that this appeal should be dismissed as untimely filed. RPFR File, Tab 1 at 6‑7.

¶23 It is well settled that the issue of the Board's jurisdiction is always before the Board and may be raised by either party or by the Board sua sponte at any time during a Board proceeding. *Stoglin v. Department of the Air Force*, 123 M.S.P.R. 163, ¶ 7 (2015), *aff'd*, 640 F. App'x 864 (Fed. Cir. 2016). The issue of whether the appellant was a probationary employee is quasi‑jurisdictional in that it determines the scope of the Board's authority to review the appeal. *Stephen*, 47 M.S.P.R. at 678. Therefore, the fact that long after the appellant initially filed his appeal in October 2013, he alleged for the first time in February 2015 that the agency failed to effect his termination during his probationary period provides no basis to dismiss this claim as untimely filed. *Id.*; IAF, Tab 36.

**The administrative judge correctly rejected the agency's addendum termination notice from the record.**

¶24 The agency lastly argues that the administrative judge erroneously excluded new evidence from the proceedings below. RPFR File, Tab 1 at 7-9, Tab 4 at 4-5. Specifically, the agency challenges the administrative judge's decision to grant the appellant's motion in limine to preclude the agency from introducing evidence or testimony related to a July 20, 2016 "Addendum to Notice of Termination During Probationary Period," which set forth allegedly "newly discovered information" in support of the appellant's termination. *Id.*; RF, Tab 6, Tab 15 at 8.

¶25        An administrative judge has broad discretion to regulate the course of the hearing and to exclude evidence that has not been shown to be relevant or material to the case at hand.  *Thomas v. U.S. Postal Service*, 116 M.S.P.R. 453, ¶ 4 (2011); 5 C.F.R. § 1201.41(b)(8), (10).   Here, as the administrative judge correctly determined, the agency's addendum does not contain information relevant to the issues in this appeal.  RF, Tab 15 at 8.  Therefore, we find that she properly granted the appellant's motion to exclude the addendum.

## ORDER

¶26        We ORDER the agency to cancel the removal and to restore the appellant effective August 23, 2013.  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶27        We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶28        We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶29        No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant

believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶30        For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60‑day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

**NOTICE OF APPEAL RIGHTS**[5]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court‑appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the

EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6] The court of appeals must <u>receive</u> your petition for

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on

review within **60 days** of the <u>date of issuance</u> of this decision. <u>5 U.S.C. § 7703</u>(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                    /s/ for
                                  _____
                                  Jennifer Everling
                                  Acting Clerk of the Board
Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1.    Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2.    The following information must be included on AD-343 for Restoration:

    a.    Employee name and social security number.
    b.    Detailed explanation of request.
    c.    Valid agency accounting.
    d.    Authorized signature (Table 63).
    e.    If interest is to be included.
    f.    Check mailing address.
    g.    Indicate if case is prior to conversion.  Computations must be attached.
    h.    Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.    Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.    Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.    Outside earnings documentation statement from agency.
4.    If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.    Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6.    If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.    If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1‑7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.    Must provide same data as in 2, a-g above.
    b.    Prior to conversion computation must be provided.
    c.    Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.